## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

| | | |
|---|---|---|
| OSCAR LOPEZ-AGUIRRE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:14-CV-003 |
| | ) | |
| SUPERINTENDENT, | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

This matter is before the Court on the habeas petition challenging a prison disciplinary proceeding, filed by Oscar Lopez-Aguirre, a *pro se* prisoner, on January 2, 2014 (DE #1). For the reasons set forth below, the petition (DE #1) is **DENIED**.

BACKGROUND

In WCC # 13-05-0089, Lopez-Aguirre was found guilty of attempted trafficking in violation of disciplinary rules 111/113. (DE #5-7.) The charge was initiated on May 4, 2013, when Officer M. Rogers wrote a conduct report stating as follows:

> Today at approx. 3:15 pm I, Ofc. M. Rogers was on duty making a security round on B2-South wing. Offender Lopez-Aguirre #230497 was in his room (B2-51-4L). Offender Lopez-Aguirre did offer to pay me five-hundred dollars to bring him a cell phone into the facility. I, Ofc. M. Rogers contacted my supervisor, Sgt. L. Jones. Offender Lopez followed me to the officer's station, begging that I would not report his attempt to traffick [sic]. Offender Lopez was escorted to the EC Holding Cell by Sgt L. Jones and Sgt J. Bournat approx 3:30 pm.

(DE #5-1.)

On May 9, 2013, Lopez-Aguirre was formally notified of the charge. (DE #5-2.) He pled not guilty, requested the assistance of a lay advocate, and waived the 24-hour notice requirement. (*Id.*) He did not request any physical evidence, and requested a witness statement from his cellmate Justin Piersimoni. (*Id.*) A statement was obtained from Piersimoni prior to hearing, who stated as follows:

> Lopez was my bunkie. When I returned to the cell he was upset & packing his stuff up. I asked him what was wrong & he said he thought Ms. Rogers got mad @ him because she misunderstood what he'd been talking about. I said "what do you mean, what happened?" He then told me that he was telling her some story about his family & ask[ed] me to try to talk to her cuz [sic] his english is real broken. I went to try & ask Ms. Rogers what had happened & she said it was none of my [business] & to leave. So I did so.

(DE #5-4.)

On May 23, 2013, a hearing was held on the charge. (DE #5-7.) Lopez-Aguirre was assisted by a lay advocate and an interpreter. (*Id.*) Through the interpreter, he made the following statement in his defense:

> He was talking to the officer about a phone that his family had bought for him. He mentioned to the officer that they paid $500 for the phone. She asked him again how much. He repeated it and she told him to pack up his stuff. I miss my family and my phone that they bought me. He was reading a letter from his family, Officer asked what was going on. He doesn't have money. He talks to his family every two weeks.

(*Id.*) Based on the evidence, the hearing officer found him guilty.

(*Id.*) Among other sanctions, he lost earned time credits. (*Id.*) His administrative appeals were denied. (DE 5-8; DE 5-9.)

DISCUSSION

When prisoners lose earned time credits in a disciplinary proceeding, the Fourteenth Amendment Due Process Clause guarantees them certain procedural protections: (1) advance written notice of the charge; (2) an opportunity to be heard before an impartial decision-maker; (3) an opportunity to call witnesses and present documentary evidence when consistent with institutional safety and correctional goals; and (4) a written statement by the fact-finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539 (1974). To satisfy due process, there must also be "some evidence" in the record to support the guilty finding. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Lopez-Aguirre first challenges the sufficiency of the evidence. (DE #1 at 2.) In reviewing a disciplinary determination for sufficiency of the evidence, "courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). "[T]he relevant question is whether

there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56 (emphasis added). The court will overturn a guilty finding only if "no reasonable adjudicator could have found [the prisoner] guilty of the offense on the basis of the evidence presented." *Henderson v. United States Parole Comm'n*, 13 F.3d 1073, 1077 (7th Cir. 1994). Additionally, the hearing officer is permitted to rely on circumstantial evidence to establish guilt. *See Hamilton v. O'Leary*, 976 F.2d 341, 345 (7th Cir. 1992).

Here, Officer Rogers reported that Lopez-Aguirre offered her $500 if she would bring a cell phone into the facility for him. (DE #5-1.) Lopez-Aguirre did not deny having this conversation, but claimed the officer misunderstood him and that he was only talking about a cell phone his family bought for him. (DE #5-7.) He submitted a witness statement from his cellmate, but it merely provided a second-hand account of his claim that the officer had misunderstood him. (DE #5-4.) The hearing officer was aware of Lopez-Aguirre's claim that the officer misunderstood him, but she chose not to credit his statement. It is not the purview of this court to reweigh the evidence to make its own determination of guilt or innocence. *McPherson*, 188 F.3d at 786. Instead, the question for this court is whether there is some evidence to support the determination made by the hearing officer. *See Hill*, 472 U.S. at 457. Based on the record, the court cannot conclude

4

that the guilty finding was without evidentiary support or otherwise arbitrary. *See id.* (due process is satisfied as long as "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary"); *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002) (witness statement constituted some evidence); *McPherson*, 188 F.3d at 786 (conduct report alone provided some evidence to support disciplinary determination). Accordingly, this claim is denied.

Lopez-Aguirre next appears to claim that he was denied evidence. (DE #1 at 2.) A prisoner has a limited right to present witnesses and evidence in his defense consistent with correctional goals and safety. *Wolff*, 418 U.S. at 566. A hearing officer has considerable discretion with respect to witness and evidence requests, and may deny requests that threaten institutional safety or are irrelevant, repetitive, or unnecessary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). Furthermore, due process only requires access to witnesses and evidence that are exculpatory. *See Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992). "Exculpatory" in this context means evidence that "directly undermines the reliability of the evidence in the record pointing to [the prisoner's] guilt." *Meeks v. McBride*, 81 F.3d 717, 721 (7th Cir. 1996). The denial of evidence will be considered harmless unless the prisoner shows that the evidence could have aided his defense. *See Jones v. Cross*, 637 F.3d 841, 847 (7th Cir.

5

2011).

Here, Lopez-Aguirre requested only one witness statement at screening (DE #5-2), and that statement was obtained and considered by the hearing officer (DE #5-4; DE #5-7).  Although unclear, he may be claiming that his rights were violated because he was not given a copy of an incident report authored by Sergeant Jones.  (DE #1 at 2; DE #13 at 3.)  However, there is nothing to reflect that he requested this or any other evidence at screening, and he cannot fault the hearing officer for failing to consider evidence he did not properly request.  *See Piggie v. McBride*, 277 F.3d 922, 925 (7th Cir. 2002).

Nor has he established a violation of his rights based on the fact that the report was originally designated as confidential.[1]  "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  *Wolff*, 418 U.S. at 556.  The hearing officer was not required to follow the formal rules of evidence or permit him to confront the adverse evidence or witnesses.  *Piggie*, 342 F.3d at 666 (inmate had no right to cross-examine or confront adverse witnesses); *Walker v. O'Brien*, 216 F.3d 626, 637 (7th Cir. 2000) (formal rules of evidence do not apply at prison disciplinary

---

[1] After consulting with the IDOC legal department, counsel for respondent determined that it was not necessary for this document to be maintained under seal.  (DE #10.)  Accordingly, the document is part of the public record in this case.  (DE #10-1.)

6

proceeding). Nor was she limited to considering evidence presented at the hearing. *Rasheed-Bey*, 969 F.2d at 361. Instead, "prison disciplinary boards are entitled to receive, and act on, information that is withheld from the prisoner and the public[.]" *See White v. Ind. Parole Bd.*, 266 F.3d 759, 767 (7th Cir. 2001).

Moreover, the incident report in question has been submitted to the court, and it is neither inculpatory nor exculpatory. (DE #10-1.) Instead it merely reiterates the account of Officer Rogers that Sergeant Jones and Sergeant Bourn escorted Lopez-Aguirre to a holding cell after this incident. (*See* DE #5-1.) The only additional piece of information reflected in the incident report is that Lopez-Aguirre was searched before entering the holding cell and no money was found on him. (DE #10-1.) However, to be guilty of attempted trafficking, Lopez-Aguirre did not need to have sufficient funds on his person to pay the officer at that particular moment. As discussed above, there was sufficient evidence in the record that Lopez-Aguirre attempted to traffic by asking an officer to bring him a phone in exchange for money. Nothing in the incident report directly undercuts the reliability of that evidence. To the extent the incident report had any exculpatory value, the hearing officer considered this evidence in reaching her decision, which is all that Lopez-Aguirre was entitled

to under *Wolff*.[2] *See White*, 266 F.3d at 768 (prisoner's rights were not violated when evidence he claimed was exculpatory was considered by the disciplinary board, even though he was not permitted to view this evidence himself). Accordingly, this claim is denied.

Next, Lopez-Aguirre claims that the hearing officer failed to follow Indiana Department of Correction ("IDOC") policies regarding the sanctions imposed and other matters. (DE #1 at 2.) However, even if he is correct that internal policies were not followed, a violation of IDOC rules would not entitle him to federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (habeas relief is only available for a violation of federal law); *Hester v. McBride*, 966 F. Supp. 765, 775 (N.D. Ind. 1997) (violation of IDOC policy in disciplinary proceeding could not support grant of habeas relief, since federal habeas court "does not sit to correct any errors of state law"). Accordingly, this claim is denied.

Giving his filings liberal construction, Lopez-Aguirre also claims that he did not receive proper notice of the charge. (*See* DE #1 at 3; DE #13 at 2-3.) Due process requires that an offender receive written notice of the charges at least 24 hours before the

---

[2] In his traverse, Lopez-Aguirre makes a confusing argument that the hearing officer should not have listed the incident report "as a reason for reaching a guilty decision." (DE #13 at 3.) It is apparent from the record that the hearing officer was merely noting that she considered the report in reaching her decision, not that she concluded the report contained inculpatory evidence. (*See* DE #5-7.) It was wholly proper for her to make a complete record of the evidence she considered in connection with her decision. *See Wolff*, 418 U.S. at 564-65; *Scruggs v. Jordan*, 485 F.3d 934, 940.

hearing. *Wolff*, 418 U.S. at 566. The basic purpose of the notice is "to inform [the prisoner] of the charges and to enable him to marshal the facts and prepare a defense." *Whitford v. Boglino*, 63 F.3d 527, 534 (7th Cir. 1995). To that end, the notice must include "the number of the rule violated ... and a summary of the facts underlying the charge." *Id.*

Here, the record reflects that Lopez-Aguirre received considerably more than 24 hours notice, since he was screened on May 9, 2013, and the hearing did not occur until May 23, 2013. (DE #5-2; DE #5-7.) The screening notice included the number of the rules violated, and the conduct report contained more than enough detail about the incident to enable him to prepare a defense. (DE #5-1; DE #5-2.) Lopez-Aguirre was obviously well aware of the facts underlying the charge, as he did prepare a defense, arguing that the officer misunderstood what was said during their conversation.[3] Based on the record, he has not established a violation of his due process rights in connection with the notice he received.

Finally, Lopez-Aguirre asserts in his traverse that he was

---

[3] Lopez-Aguirre also suggests that his rights were violated because the Indiana trafficking statute has been "repealed." (DE #1 at 3.) This argument has no merit. Lopez-Aguirre was found guilty of attempted trafficking in violation of disciplinary rules 111/113. (DE #5-7.) Rule 111 refers to attempted offenses, and Rule 113 prohibits trafficking as defined by Indiana law. IDOC Disciplinary Process For Adult Offenders, Policy No. 02-04-101. The relevant Indiana statute makes it unlawful to traffic in any state penal institution. IND. CODE § 35-44.1-3-5. The statute was previously codified at IND. CODE § 35-44-3-9, but in July 2012 (prior to the commission of the offense) was recodified at IND. CODE § 35-44.1-3-5. The substance of the statute has remained unchanged.

9

denied his right to an impartial decision-maker. (DE #13 at 5.) He did not raise this claim in his petition, and a traverse is not the place to be asserting new claims for the first time. *See* Rule 2(c)(1) of the Rules Governing Section 2254 Cases (providing that all grounds for relief must be contained in the petition). In any event, he has not established a violation of his due process rights. In the prison disciplinary context, adjudicators are "entitled to a presumption of honesty and integrity," and "the constitutional standard for improper bias is high." *Piggie*, 342 F.3d at 666. Due process prohibits a prison official who was substantially involved in the underlying incident from acting as a decision-maker in the case. *Id.* However, due process is not violated simply because the hearing officer knew the inmate, presided over a prior disciplinary case, or had some limited involvement in the events underlying the charge. *Id.*

Here, Lopez-Aguirre does not argue—nor is there evidence in the record to suggest—that the hearing officer was involved in any way in the events underlying the charge. Instead, he asserts that the hearing officer was biased because she works with Officer Rogers, as well as the staff member who served as an interpreter, and there was "camaraderie" among them. (DE #13 at 5.) As outlined above, this was not a formal criminal proceeding. The fact that the prison staff involved knew each other, worked together, or even engaged in off-the-record conversations, does not violate due

process in this context.  *See Piggie*, 342 F.3d at 666; *White*, 266 F.3d at 767.

Lopez-Aguirre may also be asserting that the hearing officer was biased because she rejected his proffered defense. (DE #13 at 3.) However, it was her job to weigh the evidence and assess the relative credibility of the witnesses, and her adverse ruling does not establish impermissible bias. *Liteky v. United States*, 510 U.S. 540, 555-56 (1994). Accordingly, this claim is denied.

CONCLUSION

For the reasons set forth above, the petition (DE #1) is **DENIED**.

DATED: July 30, 2014              /s/ RUDY LOZANO, Judge
                                  **United States District Court**